```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAID GSSIME,
                                        DECISION AND ORDER
                Plaintiff,              No. 6:08-CV-6404(MAT)
    -vs-

Mr. JOHN BURGE, Elmira C.F.
Superintendent; CORRECTION
OFFICER Bennett; Lieutenant
SCHORNSTHEMER,

                Defendants.
_____
```

## I. Introduction

Pro se plaintiff Said Gssime ("Gssime" or "Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 asserting that Defendants, employees of New York State Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights while he was an inmate in their custody. Presently pending before the Court are the parties' competing motions for summary judgment (Dkt ##38, 48) pursuant to Fed. R. Civ. P. 56(c). Also pending is Plaintiff's Motion Pursuant to 28 U.S.C. § 2403 (Dkt #46).

## II. Factual Background

Plaintiff's supporting allegations cover a number of disparate topics. To avoid unnecessary repetition, the facts pertinent to the alleged constitutional violations will be set forth below in the sections addressing Plaintiff's specific claims.

**III. General Legal Principles**

    **A.**    **42 U.S.C. § 1983**

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law, and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).

**B.**    **Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see generally, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 324.

If the movant meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Id. at 331; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing 10A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2725, pp. 93-95 (1983)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323. The moving party thus is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. Id.

The nonmoving party must produce "significant probative evidence" demonstrating that a material factual dispute does in fact exist; otherwise, summary judgment is appropriate. Anderson, 477 U.S. at 249 (citation omitted). In order to establish a material issue of fact, the nonmovant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." Id. at 248-49 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus,

the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e) advisory committee's note on 1963 amendments).

**IV. Discussion**

   **A. Eighth Amendment Claim Against Correction Officer Bennett**

Plaintiff alleges that on February 9, 2007, he was subjected to a pat-frisk, during which Correction Officer Bennett ("CO Bennett") fondled his genitals. As an initial matter, Plaintiff has never effectuated service of the complaint upon CO Bennett, and therefore the claim against him is dismissible without prejudice pursuant to Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

In any event, the Court finds that Plaintiff's allegation that his genitals were fondled during a pat-frisk fails to articulate an actionable constitutional claim, and therefore the claim against CO Bennett must be dismissed with prejudice. E.g., Davis v. Castleberry, 364 F. Supp.2d 319, 321 (W.D.N.Y. 2005) ("Even assuming that Casselberry did touch plaintiff's penis, however, I find that insufficient to state a constitutional claim.") (citing Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) (holding that

several instances of alleged sexual harassment and touching, though "despicable" and "potentially . . . the basis of state tort actions," "d[id] not involve a harm of federal constitutional proportions as defined by the Supreme Court") (citations omitted); Williams v. Keane, No. 95 CIV. 0379, 1997 WL 527677, at *1 (S.D.N.Y. Aug. 25, 1997)).

**B.   Due Process Claim Against Lieutenant Schornstemer**

CO Bennett issued a misbehavior report against Plaintiff following the February 9, 2007 pat-frisk incident, and Lieutenant Schornstemer conducted the ensuing disciplinary hearing. Lieutenant Schornstemer found Plaintiff guilty and sentenced him to 30 days in keeplock. Plaintiff claims that Lieutenant Schornstemer discriminated against him and acted with retaliatory animus during the disciplinary hearing.

To succeed on a procedural due process claim stemming from segregated confinement, the inmate must demonstrate both that the confinement or restraint creates an "atypical and significant hardship" under Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 2300 (1995); and that the state has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint. Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). Post-Sandin, the decisions in the Second Circuit are unanimous that keeplock or SHU confinement of 30 days or less in a New York prison is not an "atypical or

significant hardship" under Sandin. Williams v. Keane, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing, inter alia, Frazier v. Coughlin, 81 F.3d at 317 (12 days in SHU); Sullivan v. Schweikhard, 95 Civ. 0276, 1997 WL 349983, at *3 (S.D.N.Y. June 25, 1997) (9 days in keeplock); Duncan v. Keane, 95 Civ. 1090, 1997 WL 328070, at *2 (S.D.N.Y. June 13, 1997) (30 days in keeplock); Harris v. Keane, 962 F. Supp. 397, 404 (S.D.N.Y. 1997) (23 days in keeplock); Ramirez v. Coughlin, 93 Civ. 0765, 1996 WL 194324, at *3-4 (S.D.N.Y. April 22, 1996) (30 days combination of SHU and keeplock)). Because Plaintiff has not established a protectible liberty interest in remaining free from 30 days of keeplock confinement, his due process claim fails. See Frazier, 81 F.3d at 317-18 ("Frazier cannot establish a protected liberty interest in remaining in the general prison population, and dismissal of his procedural due process claim was proper.").

**C. Deliberate Medical Indifference Claim Against Superintendent Burge**

Plaintiff alleges that he was "denied access to dental surgery or outside medical need because the Facility at that time was operating without dental departement [sic] and for several months defendant Mr. Burge the Superintendent refuse to hire a dentist or to transffered [sic] inmates to outside Facility dental Immergency [sic] and care." Plaintiff's Affidavit in Support of Motion for Summary Judgment, ¶ 3.

Before arriving at Elmira Correctional Facility ("ECF"), Plaintiff had complained on February 12, 2006, about pain in the last lower molar on the left side (tooth #18) and opined that it had to be removed. On August 9, 2006, Plaintiff submitted a note stating that he had a dental emergency, and he was seen on August 11, 2006, and August 15, 2006, by Dr. Gibson. An x-ray of tooth #18 revealed severe bone loss around both root apices. Plaintiff informed Dr. Gibson that he hoped to keep #18 in place until he was going to be released from prison in about one year's time. Dr. Gibson advised Plaintiff that he believed Plaintiff would lose the tooth within a year. Dr. Gibson gave Plaintiff prescriptions for penicillin and Motrin, and told him to schedule a follow-up appointment if needed.

From September 5, 2006, through January 10, 2007, Elmira Correctional Facility ("ECF") was without a facility dentist. See Dkt #48-4. The facility dentist apparently was serving in the Iraq war. During the facility dentist's absence, three dentists from other DOCCS facilities would see inmates each week at ECF. Id. Superintendent Burge indicates that DOCCS Central Office in Albany was directly responsible for hiring medical staff, and that he played only a limited role in those decisions. Id.

Plaintiff's records (Dkt #49) show that from October 2006, to January 2007, he consulted with, and received treatment from, dental care providers at ECF for his various complaints. On

January 12, 2007, Plaintiff saw Dr. Haag due to his continued pain in tooth #18. Plaintiff gave his informed consent to have tooth #18 extracted by signing a consent form. After extracting tooth #18, Dr. Haag prescribed Plaintiff penicillin as prophylactic measure against infection and Motrin for pain. See Dkt #48-3. Plaintiff, at his deposition, could not recall seeing Dr. Haag in January 2007, and claimed that he personally had removed tooth #18. See Deposition of Said Gssime ("Gssime Dep.") at 77-82, 98-100.[1]

On March 12, 2007, Plaintiff filed Grievance #EL32-343-07 complaining that ECF's medical and dental departments were "extremely sub-par"[2] and requestinig that ECF hire physicians and dentists. Superintendent Burge conducted an investigation, as part of which Plaintiff was interviewed. However, Plaintiff offered no witnesses or evidence to support his claims. Superintendent Burge noted in his March 19, 2007 denial of Plaintiff's grievance that ECF had been attempting to hire a dentist and a physician since vacancies existed, and recent hires for both positions had occurred.

---

[1] Plaintiff has a history of mental health problems dating back to 1995. In 1997, Plaintiff fell and suffered a brain injury which caused him to have very little memory between 1997 and 2003. See Gssime Dep. at 19-26, 105.

[2] The grievance packet for Grievance #EL32-343-07 has been submitted as an Attachment the Declaration of John Burge (Dkt #48-4).

The Inmate Grievance Resolution Committee ("IGRC") agreed with Superintendent Burge that Plaintiff's grievance had no merit. The IGRC noted that

> [a]ccording to Dental Records, the Grievant corresponded with them about an issue in November 2006. The dentist subsequently saw him on January 12, 2007. Since that time, no requests or complaints have been received.

Attachment to Dkt #48-4.

Likewise, the Central Office Review Committee found no merit to Plaintiff's grievance, noting that "[u]pon full hearing of the facts and circumstances in the instant case, and upon recommendation of the Division of Health Services," Superintendent Burge's determination should be upheld. Attachment to Dkt #48-4.

In order to establish an Eighth Amendment claim for the denial of adequate dental or medical care, Plaintiff must plead and prove that prison officials acted with deliberate indifference to his serious dental needs. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976); other citations omitted)). The Second Circuit has noted that DOCCS is not constitutionally obligated "to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls[,]" for as common experience indicates, "the great majority of . . . prisoners would not in freedom or on parole enjoy the excellence in dental care which the plaintiffs understandably seek on their behalf." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986); see

also id. at 216 (holding that the district court abused its discretion, in civil rights action by state prisoners seeking improved dental care, by issuing mandatory preliminary injunction specifying in detail system of dental care to be provided, instead of using State department of corrections plan as its guide subject to minor modifications to cure perceived constitutional deficiencies in existing system).

Defendants argue that Superintendent Burge did not have the requisite personal involvement in Plaintiff's claim the ECF failed to maintain an adequate program to address the dentistry needs of its inmates. In general, "[w]hile mere receipt of a letter from a prisoner is insufficient to establish individual liability, an official's actions and responses arising out of a grievance may [confer such liability]." Bodie v. Morgenthau, 342 F. Supp.2d 193, 203 (S.D.N.Y. 2004) (citing Greenwaldt v. Goughlin, 93 Civ. 6551 (LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)). On the other hand, "where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint," personal involvement will be found. Johnson v. Wright, 234 F. Supp.2d 352, 363 (S.D.N.Y. 2002). Here, Superintendent Burge personally investigated Plaintiff's grievance, conducted an interview, and issued a written response. Plaintiff thus has adequately established Superintendent Burge's personal

involvement, at least insofar as his Complaint challenges the overall adequacy of the dental care provided at ECF.

Nonetheless, the Court agrees with Defendants that Plaintiff has not established that he was denied adequate dental care in violation of the Eighth Amendment. Although ECF was without a facility dentist for a period of time, there is no indication that Plaintiff's dental needs went unmet. To the contrary, Plaintiff received regular treatment for his ailments by qualified dental care providers at ECF. Plaintiff's claims amount to nothing more than mere disagreement with the appropriate course of treatment and dissatisfaction with the level of care he received, neither of which state actionable claims under the Federal constitution. See Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir.) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves."), vacated in part as moot, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983).

Plaintiff also suggests that Defendants should be held liable for alleged injuries that occurred when he supposedly extracted his own tooth. As Defendants point out, this allegation was not part of Plaintiff's grievance, and thus the grievance did not fulfill the exhaustion requirement's purpose of "afford[ing] prison officials time and opportunity to address complaints prior to judicial review." Baskerville v. Blot, 224 F. Supp.2d 723, 730 (S.D.N.Y.

2002) (quotation omitted). The claim is unexhausted and not properly before this Court. See also Donahue v. Bennett, 2004 WL 1875019, at *7-8 (W.D.N.Y. Aug. 17, 2004) (finding that allegations in grievance were narrower than allegations civil rights complaint, and therefore inmate's medical claim should be limited to what is in the grievance). Moreover, Plaintiff cannot establish Superintendent Burge's personal involvement in this regard because he did not have notice that the extraction of tooth #18 was an issue. Finally, and most critically, this claim is factually baseless. Plaintiff's unsupported assertion that he pulled his own toot is contradicted by the medical records, which indicate that his tooth was extracted by a qualified dentist, with Plaintiff's consent.

**IV. Plaintiff's Motion Pursuant to 28 U.S.C. § 2403**

Plaintiff has filed a motion (Dkt #46) pursuant to "28 U.S.C. § 2403(a)(b) [sic]" in which he restates all of the claims asserted in his Complaint under 42 U.S.C. § 1983. Section 2403(a) does not apply because the United States is not a party to this action. Section 2403(b) provides in relevant part that

> [i]n any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403(b). Because Plaintiff has not asserted in his Section 2403 motion that any state laws are unconstitutional, but has merely used the motion to repackage his civil rights claims, Plaintiff's request to certify a question under 28 U.S.C. § 2403 is factually and legally baseless. His motion accordingly is denied.

**V. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt #38) is denied with prejudice. Defendants' Motion for Summary Judgment (Dkt #48) is granted, and the Complaint (Dkt #1) is dismissed in its entirety with prejudice. Plaintiff's Motion Pursuant to 28 U.S.C. § 2403 (Dkt #46) is denied with prejudice. The Court hereby certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Decision and Order would not be taken in good faith, and therefore denies leave to appeal in forma pauperis. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: July 8, 2013
       Rochester, New York